# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

…………………………………...……………X
In re:                                                    :
                                                          :
      TCI2 Holdings, LLC, <u>et al</u>.,          :
                                                          :  **Case No.:**
           Debtors.                :
…………………………………...……………X
                                                          :
Beal Bank, S.S.B, as Administrative Agent,                :  <u>**On Appeal From**</u>**:**
and Icahn Partners LP, Icahn Partners Master               :
Fund LP, Icahn Partners Master Fund II LP,                :  Chapter 11
and Icahn Partners Master Fund III LP,                    :
                                                          :  Case No. 09-13654 (JHW)
      Appellants,                            :
                                                          :
v.                                                        :
                                                          :
Ad Hoc Committee of Holders of 8.5% Senior                :
Secured Notes Due 2015 and the Debtors,                   :
                                                          :
                                                          :
      Appellees.                             :
                                                          :
…………………………………...……………X

## EMERGENCY MOTION OF BEAL BANK AND ICAHN PARTNERS FOR EXPEDITED APPEAL OF THE ORDER CONFIRMING THE SUPPLEMENTAL MODIFIED SIXTH AMENDED JOINT PLAN OF REORGANIZATION OF THE AD HOC COMMITTEE OF HOLDERS OF 8.5% SENIOR <u>SECURED NOTES DUE 2015 AND THE DEBTORS</u>

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND .......................................................................................................... 4

ARGUMENT ............................................................................................................... 7

     I.     Legal Standards................................................................................. 7

          A     The Bankruptcy Code Permits Expedited Appeals........................ 7

          B     Standards For Granting Expedited Appeal ..................................... 8

     II.    The Court Should Grant An Expedited Appeal Schedule Under Rule 8011(d) To Prevent Irreparable Harm Associated With the Potential Application of The Doctrine of Equitable Mootness. ................................. 9

     III.   Alternatively, The Court Should Grant An Expedited Appeal Schedule In The Interest Of Expediting A Decision Under Bankruptcy Rule 8019 .... 14

     IV.   Proposed Appeal Schedule .................................................................... 16

CONCLUSION.......................................................................................................... 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AT&T v. Winback & Conserve Program, Inc.*,
   42 F.3d 1421 (3d Cir. 1994).................................................................................. 16
*Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*,
   416 F.3d 136 (2d Cir. N.Y. 2005)........................................................................ 14
*In re Adelphia Commc'ns Corp.*,
   361 B.R. 337 (S.D.N.Y. 2007)............................................................................. 11
*In re Chateaugay*,
   10 F.3d 944 (2d Cir. 1993)................................................................................... 14
*In re Combustion Eng'g. Inc.*
   2003 Bankr. LEXIS 1044 (Bankr. D. Del. July 2, 2003)............................. 9, 14
*In re Continental Airlines*,
   91 F.3d 553 (3d Cir. 1996)................................................................................... 12
*In re Cujas*,
   376 B.R. 480 (Bankr. E.D. Pa. 2007) ................................................................. 11
*In re Dairy Mart Convenience Stores, Inc.*,
   272 B.R. 66 (S.D.N.Y. 2002)............................................................................ 7, 8
*In re Delco Dev. Mid-Island Ltd. P'ship*
   1990 U.S. Dist. LEXIS 18291, (E.D.N.Y. Nov. 27, 1990)................................... 8
*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*,
   135 B.R. 456 (S.D.N.Y. 1992)............................................................................... 7
*In re Island Helicopters, Inc.*,
   1997 WL 466973  (E.D.N.Y. 1997).................................................................... 7
*In re Pacific Lumber Co.*,
   584 F.3d 229 (5th Cir. 2009) ............................................................................... 14
*In re Pan-Europe Commc'ns N.V.*,
   2003 WL 221819  (S.D.N.Y. 2003).................................................................... 7
*In re Premier Operations*,
   Ltd., 293 B.R. 334 (S.D.N.Y. 2003) ..................................................................... 8
*In re Rashid*,
   210 F.3d 201 (3d Cir. 2000)................................................................................... 9
*In re St. Johnsbury Trucking Co.*,
   185 B.R. 687 (S.D.N.Y. 1995)............................................................................. 10
*In re United Pan-Europe Commc'ns N.V.*
   2003 U.S. Dist. LEXIS 1297 (S.D.N.Y. Jan 30, 2003) ..................................... 9
*Nordhoff Invs. Inc. v. Zenith Elecs. Corp.*,
   258 F.3d 180 (3d Cir. 2001)................................................................................. 12
*Phila. Newspapers, LLC v. Official Comm. of Unsecured Creditors,*
   408 B.R. 585 (E.D. Pa. 2009)……………………………………………….........11

*Retired Pilots Assoc. of U.S. Airways, Inc. v. US Airways Group, Inc. (In re US Airways Group Inc.)*,

   369 F.3d 806 (4th Cir. 2004) ................................................................... 14, 15

*United States Tr. v. Official Comm. of Equity Sec. Holders (In re Zenith Elecs. Corp.*,

   329 F.3d 338 (3d Cir. Del. 2003)……………………………………………..12, 14

## FEDERAL STATUTES

11 U.S.C. § 1101 ........................................................................................... 12
11 U.S.C. § 1101(2) ...................................................................................... 12
11 U.S.C. § 1127(b) ...................................................................................... 12
11 U.S.C. § 1129(b) .................................................................................... 2, 6
11 U.S.C. § 1129(c) ................................................................................ 3, 6, 13

## FEDERAL RULES

Fed. R. App. P. 2 ............................................................................................. 8
Rule 8011 ........................................................................................................ 9
Rule 8011(d) ................................................................................................ 7, 8, 9
Rule 8019 ............................................................................................ 7, 8, 9, 14
Rules 8011 and 8019 Federal Rules of Bankruptcy Procedure ....................... 1
Rules 8011(d) or 8019 ..................................................................................... 9

Beal Bank, S.S.B. ("Beal Bank"), as Administrative Agent, and Icahn Partners LP, Icahn Partners Master Fund LP, Icahn Partners Master Fund II LP, and Icahn Partners Master Fund III LP (collectively, "Icahn Partners" and, together with Beal Bank, the "Movants"), by and through their respective undersigned counsel, hereby move (the "Motion") this Court, pursuant to Rules 8011 and 8019 Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to institute an expedited schedule for consideration of their appeal of the Order confirming the Supplemental Modified Sixth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Proposed by the Ad Hoc Committee of Holders of 8.5% Senior Secured Notes Due 2015 (the "Ad Hoc Committee" or the "AHC") and the Debtors (the "AHC/Debtor Plan")[1] entered by the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") on May 7, 2010 (the "Confirmation Order")[2] , as set forth herein. In support of this Motion, Movants submit the Affidavit of Daniel J. Saval, attached as Exhibit A hereto, and respectfully state as follows:[3]

## PRELIMINARY STATEMENT

If Movants' appeal of the Confirmation Order is not heard on an expedited basis, Movants (the Appellants) may be deprived of the opportunity to obtain appellate review of several critical issues in connection with the AHC/Debtor Plan. Absent an

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the AHC/Debtor Plan.

[2] A true and accurate copy of the Confirmation Order (including as an exhibit the AHC/Debtor Plan), is attached hereto as Exhibit B.

[3] Pursuant to Bankruptcy Rule 8011(d), the Movants state that they did not seek the relief requested herein before the Bankruptcy Court because the requested relief relates to scheduling matters before the District Court.

expedited schedule, the Movants will suffer irreparable harm, under the doctrine of equitable mootness, as distributions pursuant to the AHC/Debtor Plan will commence and the AHC/Debtors Plan will likely be substantially consummated by the time the Movants' appeal from the Confirmation Order is heard. The threat of substantial consummation of the AHC/Debtor Plan before consideration of the Movants' appeal is very real here. The major "gating" item to consummation of the AHC/Debtor Plan is the procurement of necessary regulatory approvals from the New Jersey Casino Control Commission (the "NJCCC"). Counsel to the AHC represented at a June 3, 2010 hearing before the Bankruptcy Court that, on July 14, 2010, the NJCCC will hold a hearing to consider the Debtors' and the AHC members' applications for licensure or waiver from the licensure requirement. If the NJCCC grants those applications on July 14, the Effective Date of the AHC/Debtor Plan may occur on or shortly after that date.

On the Effective Date of the AHC/Debtor Plan, various fundamental transactions will occur, including, among others, a distribution of new equity in the reorganized Debtors to members of the AHC and other unsecured creditors pursuant to a rights offering, and the entry of the Debtors into a new trademark license agreement governing its rights to use the "Trump" brand. At that point, the doctrine of equitable mootness may preclude the Movants from obtaining review of a number of issues they have raised on appeal (which issues, if meritorious, could mandate relief that would unravel the plan). The issues on appeal are substantial, and may include, among others, Movants' challenges to the Bankruptcy Court's finding that the AHC/Debtor Plan is feasible, the Bankruptcy Court's determination that the Movants' liens under the AHC/Debtor Plan comply with the "cram down" requirements of Bankruptcy Code

Section 1129(b), the Bankruptcy Court's approval of a global settlement between the Debtors and Donald Trump, and the Bankruptcy Court's decision to confirm the AHC/Debtor Plan instead of the Beal/Icahn Plan pursuant to Bankruptcy Code Section 1129(c). Given that the NJCCC is scheduled to hold a licensure hearing on July 14, there is a distinct possibility that the Effective Date will occur in mid-July. Under a normal appeal schedule, it is virtually assured that Movants' appeal will not be decided by that time. Accordingly, in the absence of an expedited appeal schedule, Movants may be stripped of their right to appellate review of critical issues concerning confirmation of the AHC/Debtor Plan, and thereby suffer irreparable harm.[4]

Even absent the irreparable harm that is present here, this Court should exercise its power to order an expedited appeal in the interests of rendering an expedited decision. An expedited decision would be in the best interests of all stakeholders in the Debtors' estates, including the Debtors and the AHC. A prompt resolution will eliminate the uncertainty of the Debtors' path to emergence from Chapter 11, and minimize the disruption to the estates and the parties-in-interest if the Movants are successful on appeal. Indeed, the Movants are unaware of any basis on which the Debtors or the AHC could assert they would be prejudiced by an expedited appeal schedule. Additionally, an expedited decision would be in the public interest. A critical issue on appeal will relate to the feasibility of the AHC/Debtor Plan. The public generally, and the Atlantic City market specifically, has a significant interest in ensuring that the Debtors emerge from bankruptcy under a feasible plan that safeguards the Debtors' future prospects and allows

---

[4]     On May 17, 2010 the Movants filed in with Bankruptcy Court a motion for a stay of the Confirmation Order pending Movants' appeal thereof (the "Stay Motion"). The Stay Motion asserted, *inter alia*, that the Movants would suffer irreparable harm if the Confirmation Order was not stayed pending the appeal. The Movants withdrew their Stay Motion on June 2, 2010. As a consequence, the Movants have elected to proceed by seeking an expedited appeal.

them to avoid a fourth bankruptcy filing.  However, as noted, based on the prospects that the Effective Date may occur as early as mid-July, Movants may be stripped of their right to challenge the Bankruptcy Court's feasibility finding if a normal schedule applies.  In light of the irreparable harm to Movants that may result on a normal appellate schedule, and in the interest of expediting a decision, an expedited schedule is warranted in this appeal.

## **BACKGROUND**

The Debtors own or manage three casino hotel properties in Atlantic City, New Jersey: the Trump Taj Mahal Casino Resort, the Trump Plaza Hotel and Casino, and the Trump Marina Hotel.  See In re TCI 2 Holdings, LLC, et al., Ch. 11  Case No. 09-13654 (JHW) (Bankr. D.N.J. Apr. 12, 2010), *Opinion on Confirmation* [Docket No. 1434] ("Confirmation Opinion" or "Op.") at 54.[5]  These cases – commenced on February 18, 2009 – are the Debtors' third Chapter 11 filing, and their second Chapter 11 filing in five years.

Icahn Partners, one of the Movants, are the only lenders under a Credit Agreement dated as of December 21, 2007 (as amended, supplemented or modified, the "First Lien Credit Agreement"), pursuant to which approximately $483 million in principal amount of outstanding first lien loans to the Debtors are outstanding.  Beal Bank, the other Movant, is the administrative agent and collateral agent under the First Lien Credit Agreement.[6]

---

[5]     A true and accurate copy of the Confirmation Opinion is attached hereto as Exhibit C.

[6]     Beal Bank initially held all of the loans under the First Lien Credit Agreement. In December  2009, Beal Bank sold 51% of the loans under the First Lien Credit Facility (and certain related rights and interests) to Icahn Partners.  Thereafter, in April 2010, Icahn Partners

Pursuant to their plan of reorganization confirmed in 2005, as part of the Debtors' last Chapter 11 proceedings, the Debtors issued $1.25 billion aggregate principal amount of 8.5% Senior Secured Notes due 2015 (the "Second Lien Notes"). The Second Lien Notes are secured by a second-priority lien and security interest in certain of the Debtors' assets (the holders of such notes, the "Second Lien Noteholders"), junior to the lien and security granted to holders of the Debtors' first lien indebtedness. The AHC represents the holders of over 60% of the principal amount of the outstanding Second Lien Notes. See Op. at 8.

Beginning in late February 2009 and continuing through early March 2010, the Bankruptcy Court presided over a nine-day evidentiary hearing to consider confirmation of competing plans of reorganization, one proposed jointly by the AHC and the Debtors (the "AHC/Debtor Plan") and the other proposed jointly by Beal Bank and Icahn Partners (the "Beal/Icahn Plan"). The AHC/Debtor Plan contemplates a capital investment to be provided through a $225 million rights offering (the "Rights Offering") for 70% of the common stock of the reorganized Debtor, backstopped by the members of the AHC. Of the $225 million raised through the Rights Offering, $125 million will be paid to the First Lien Lenders as a partial paydown of the first lien loans. The AHC/Debtor Plan proposes to "cram down" the First Lien Lenders with an Amended and Restated Credit Agreement (the "New Term Loan"), pursuant to which the First Lien Lenders will receive deferred cash payments on account of the remaining outstanding principal amount of the first lien loans. The AHC/Debtor Plan also incorporates the so-called DJT Settlement Agreement, pursuant to which, *inter alia*, Donald Trump will enter

---

acquired the remaining first lien indebtedness from Beal Bank pursuant to the terms of a put/call agreement.

into an amended trademark license agreement and amended services agreement with the Debtors (on terms materially less favorable to the Debtors than the existing agreements). See Op. at 9.

The essential feature of the Beal/Icahn Plan is the conversion of the entire amount of first lien debt (all of which is currently held by Movant Icahn Partners) into equity, leaving no debt on the company upon emergence. The Beal/Icahn Plan also provided that Icahn Partners would make $125 million of equity investments in the Debtors.

On April 12, 2010, the Bankruptcy Court issued its Confirmation Opinion. In the Confirmation Opinion, the Bankruptcy Court found that both plans were confirmable. The Bankruptcy Court then determined that the AHC/Debtor Plan should be confirmed over the Beal/Icahn Plan pursuant to Section 1129(c), notwithstanding the Bankruptcy Court's own finding that the Beal/Icahn Plan was more feasible. See id. at 6. On May 7, 2010, the Bankruptcy Court entered the Confirmation Order.[7]

On May 17, 2010, Beal Bank and Icahn Partners filed a Notice of Appeal to this Court seeking review of the Confirmation Order. On June 1, 2010, Movants filed their _Statement of Issues To Be Presented On Appeal And Designation Of Record To Be Transmitted To The District Clerk_, a true and accurate copy of which is attached hereto as Exhibit D. In that filing, the Movants raised substantial appellate issues concerning the Confirmation Order, including challenges to (i) the Court's finding that the AHC/Debtor Plan is feasible; (ii) the Court's conclusion that the Movants retain their pre-petition liens as part of their "cram down" treatment under 11 U.S.C. § 1129(b); (iii) the Court's

---

[7] The Bankruptcy Court's Confirmation Opinion was incorporated by reference into the Confirmation Order, and reference to the Confirmation Opinion herein should also be deemed to be reference to the Confirmation Order. See Confirmation Order, p. 7.

approval of the DJT Settlement Agreement; and (iv) the Court's decision to confirm the AHC/Debtor Plan instead of the Beal/Icahn Plan (after the Court found both plans to be confirmable).

## ARGUMENT

## AN EXPEDITED APPEAL IS WARRANTED UNDER THE CIRCUMSTANCES

### I. Legal Standards

#### A    The Bankruptcy Code Permits Expedited Appeals

Under Bankruptcy Rule 8011(d), which permits the filing of emergency motions for expedited appeal from the bankruptcy court, various district courts have granted expedited appeals. See Fed. R. Bankr. P. 8011(d) (setting forth requirements for when "a movant requests expedited action on a motion on the ground that, to avoid irreparable harm, relief is needed in less time than would normally be required for the district court or bankruptcy appellate panel to receive and consider a response"); see, e.g., In re Dairy Mart Convenience Stores, Inc., 272 B.R. 66, 68 (S.D.N.Y. 2002) (granting expedited review under Bankruptcy Rule 8011(d)); In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, 135 B.R. 456, 458 (S.D.N.Y. 1992) (same).

Further, district courts have granted motions for expedited appeal of bankruptcy court decisions under Bankruptcy Rule 8019, which provides that "[i]n the interest of expediting decision or for other cause, the district court or the bankruptcy appellate panel may suspend the requirements or provisions of the rule in Part VIII, except Rules 8001, 8002 and 8013, and may order proceedings in accordance with its direction." See Fed. R. Bank. P. 8019; In re Island Helicopters, Inc., 1997 WL 466973 at *4 (E.D.N.Y. 1997) (granting motion for expedited appeal under Bankruptcy Rule 8019); see also In re Pan-Europe Commc'ns N.V., 2003 WL 221819 at *2 (S.D.N.Y. 2003)

(Rule 8019 "permits a District Court the latitude to suspend or modify the normal rules and procedures governing appeals from a bankruptcy court decision and expedite the determination of an appeal"); 10 Collier on Bankruptcy ¶ 8019.01 (15th ed.) ("The primary purpose of Federal Rule of Bankruptcy Procedure 8019 is to give the district courts and bankruptcy appellate panels the power to expedite the consideration of cases that are of 'pressing concern to the public or to the litigants.'") (quoting Original Advisory Committee Note to Fed. R. App. P. 2, from which Bankruptcy Rule 8019 is drawn). Thus, under Bankruptcy Rule 8019, this Court may, *inter alia*, expedite the processes contemplated in Bankruptcy Rule 8006 (Record and Issues on Appeal) and Bankruptcy Rule 8007 (Completion and Transmission of the Record; Docketing of the Appeal). See 10 Collier on Bankruptcy ¶ 8019.01 (15th ed.).

### B    Standards For Granting Expedited Appeal

A district court may expedite consideration of an appeal from a bankruptcy court decision either: (1) under a showing of irreparable harm under Bankruptcy Rule 8011(d) and/or Bankruptcy Rule 8019; or (2) in the interests of expediting a decision under Bankruptcy Rule 8019.

As to the irreparable harm standard, Bankruptcy Rule 8011(d) provides that a party moving for expedited consideration of appeal must demonstrate that to avoid irreparable harm, relief is needed in less time than would normally be required to appeal a bankruptcy court's decision. See Fed R. Bank. P. 8011(d); In re Premier Operations, Ltd., 293 B.R. 334, 335 (S.D.N.Y. 2003); see also In re Dairy Mart Convenience Stores, Inc., 272 B.R. 66, 70 (S.D.N.Y. 2002); In re Delco Dev. Mid-Island Ltd. P'ship, 1990 U.S. Dist. LEXIS 18291, * 1 (E.D.N.Y. Nov. 27, 1990). Additionally, under Bankruptcy Rule 8019, district courts may suspend timing requirements in connection with a motion

or appeal "for other cause."  See Fed. R. Bank. P. 8019; In re Rashid, 210 F.3d 201, 209 n.4 (3d Cir. 2000) (district court properly allowed party to file brief "out of time 'in the interest of expediting decision or other good cause'").  Courts have equated the "for other cause" standard in Bankruptcy Rule 8019 to the irreparable harm standard under Bankruptcy Rule 8011(d).  See In re Combustion Eng'g, Inc., 2003 Bankr. LEXIS 1044, * 3-4 (Bankr. D. Del. July 2, 2003) ("The Courts have borrowed the irreparable injury standard from Rule 8011 governing emergency motion practice to determine whether a suspension is justified under Rule 8019"); In re United Pan-Europe Commc'ns N.V., 2003 U.S. Dist. LEXIS 1297 at *7 (S.D.N.Y. Jan 30, 2003) ("the Court will read Rule 8019's requirement of showing 'good cause' to mean a showing of irreparable harm, as explicitly required in Rule 8011").  Thus, under a showing of irreparable harm, a court may grant an expedited appeal under Bankruptcy Rules 8011(d) or 8019.

Even absent a showing of irreparable harm, under the plain language of Rule 8019, a district court may modify the timing requirements merely "[i]n the interest of expediting decision."  See Fed. R. Bank. P. 8019 (providing for such relief *either* "[i]n the interest of expediting decision" *or* "for other cause); see also In re Combustion Eng'g, Inc., 2003 Bankr. LEXIS 1044, *3-4 (Bankr. D. Del. July 2, 2003) ("In the interest of expediting a decision, however, the Court has authority under Rule 8019 to suspend other timing requirements associated with a motion or appeal.").

## II.   The Court Should Grant An Expedited Appeal Schedule Under Rule 8011(d) To Prevent Irreparable Harm Associated With the Potential Application of The Doctrine of Equitable Mootness.

The Confirmation Order contains a number of important and controversial legal rulings that, the Movants respectfully submit, constitute reversible error or, at a

minimum, present serious questions of law. If the Court does not grant the requested expedited appeal, the AHC/Debtor Plan may be substantially consummated before the Movants have the opportunity to obtain appellate review and the Movants will face a risk that critical aspects of their appeal will be dismissed under the doctrine of equitable mootness. See, e.g., In re St. Johnsbury Trucking Co., 185 B.R. 687, 690 (S.D.N.Y. 1995).

The Movants face the very real possibility that the AHC/Debtor Plan may be substantially consummated, before a determination is rendered on their appeal, if such appeal is adjudicated under the normal time frames set forth in the Bankruptcy Rules, including, without limitation, Rule 8009 (providing for a 42-day briefing period following entry of the appeal on the district court's docket). At a Bankruptcy Court hearing held on June 3, 2010, counsel to the AHC made the following representation in response to the Court's inquiry regarding the status of regulatory approvals under the AHC/Debtor Plan:

> Your Honor, we have been advised that there will be a hearing on July 14th, at which time the Casino Control Commission will take up the question of whether or not to grant interim casino authorization to Avenue Capital [the lead AHC member] with respect to their application to be licensed, the waiver with respect to all other funds, as well as the grant of authority of the company to be licensed in its new form coming out of bankruptcy.

Tr. of Proceedings dated June 3, 2009 at p. 14.[8]

Once the NJCCC grants the applications of the Debtors and the AHC members for interim casino authorization and related relief, the Debtors and the AHC will be able to consummate the material transactions under the AHC/Debtor Plan,

---

[8]  True and accurate copies of the relevant pages from the transcript of the June 3, 2010 Bankruptcy Court hearing are attached hereto as Exhibit E.

including the issuance of new equity. As recently reported to the Bankruptcy Court, the hearing on such applications is scheduled for July 14, 2010. As a consequence, the Effective Date of the Plan of the AHC/Debtor Plan may occur on or shortly after July 14 (or in approximately five weeks). It is a certainty that Movants' appeal cannot be heard and decided prior to July 14 on a regular schedule, as the briefing period alone will span 42 days. Therefore, Movants face a very real risk that the AHC/Debtor Plan will be substantially consummated prior to a decision on the appeal, which could equitably moot a number of Movants' appellate issues. Courts have routinely found irreparable harm in circumstances where a party may be deprived of appellate rights. See, e.g., In re Cujas, 376 B.R. 480, 487 (Bankr. E.D. Pa. 2007) ("[T]he potential loss of a party's appellate rights through the mootness doctrine may constitute irreparable harm."); In re Adelphia Commc'ns Corp., 361 B.R. 337, 348 (S.D.N.Y. 2007) ("[L]oss of appellate rights is a quintessential form of prejudice" and finding that irreparable harm is shown where denial of motion risks mooting "*any* appeal of *significant* claims of error") (emphasis in original.) Accordingly, if the AHC/Debtor Plan is substantially consummated or distributions are made before the merits of the Movants' appeal can be heard, the Movants would be irreparably harmed as they face the risk that the court will find that their appeal is equitably moot.[9]

"[I]n analyzing the applicability of equitable mootness, the Third Circuit has noted that the 'foremost consideration is whether the reorganization plan has been substantially consummated.'" See Phila. Newspapers, LLC v. Official Comm. of

---

[9] Nevertheless, if the Court denies the Movants' request to expedite the appeal or such expedition of the appeal does not prevent consummation of the AHC/Debtors Plan, the Movants reserve the right to proceed with their appeal and to challenge any allegations of mootness.

Unsecured Creditors, 408 B.R. 585, 595 (E.D. Pa. 2009) (quoting In re Continental Airlines, 91 F.3d 553, 560 n.10 (3d Cir. 1996)).  There can be little question that, upon the Effective Date of the AHC/Debtor Plan, that plan will be substantially consummated.[10]

Whether the relief requested on appeal would affect the success of the plan, or unravel the plan, is another key factor as to the application of equitable mootness.  See United States Tr. v. Official Comm. of Equity Sec. Holders (In re Zenith Elecs. Corp.), 329 F.3d 338, 346 (3d Cir. Del. 2003) ("the critical question…is whether, if successful, the appeal might unravel the reorganization plan"); see also Nordhoff Invs. Inc. v. Zenith Elecs. Corp., 258 F.3d 180, 185 (3d Cir. 2001) (the equitable mootness doctrine is to be applied only in order to "prevent[] a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract.").

There are several key appellate issues raised by the Movants that, if successful, could unravel the AHC/Debtor Plan after the Effective Date, including:

- Feasibility:  A central issue raised on appeal is whether the Bankruptcy Court erred in finding the AHC/Debtor Plan feasible.  If the Movants are successful on this issue, likely relief could include an unraveling of material transactions under the Plan (including the issuance of new debt and equity).

---

[10]    The Bankruptcy Code defines "substantial consummation" to mean: "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan."  11 U.S.C. § 1101(2).  Moreover, the AHC/Debtor Plan, at Section 12.3, provides: "On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code."

- Retention of Liens: The Movants assert on appeal that the Bankruptcy Court erred in finding that they retain their pre-petition liens under the Plan. This argument is predicated, in part, on the fact that the Movants pre-petition liens include a pledge on a "worldwide" license to the Trump name, and pursuant to the AHC/Debtor Plan they will only have a pledge on a license with respect to the Debtors' existing three casinos in Atlantic City, New Jersey. If the Movants are successful in this argument, the likely relief could include the retraction of the new trademark license agreement with Mr. Trump (the "New TLA"), which will be difficult or even impossible to accomplish (for example, Mr. Trump may have already licensed his name to non-Debtor businesses by that time).

- DJT Settlement Agreement: The Movants have challenged the Bankruptcy Court's approval of the DJT Settlement Agreement, which provides for, *inter alia*, the execution of the New TLA. For the same reasons set forth above, if the Movants are successful on this issue, the Court may be unable to grant appropriate relief.

- Backstop Fee: The Movants assert that the Bankruptcy Court erred in approving a distribution of 20% of the reorganized Debtors' equity to the AHC members as a purported "backstop fee" under the AHC/Debtor Plan. Reversal on appeal would require the Court to unwind that equity distribution.

- Section 1129(c) Analysis: The Movants also challenge the Court's determination to confirm the AHC/Debtor Plan over the Beal/Icahn Plan pursuant to Section 1129(c), which provides that the Court may only confirm one plan. Plainly, if the Movants are successful on this issue, the remedy would be an unraveling of the AHC/Debtor Plan.

Given the distinct possibility that the AHC/Debtor Plan may be substantially consummated in approximately five weeks, time is of the essence. In the absence of an expedited appeal schedule, the appellate issues described above may become equitably moot, and the AHC and the Debtors may seek to defeat portions of the Movants' appeal on that basis, rather than on the merits.[11] Indeed, courts have found that

---

[11]     Movants do not concede that, upon the occurrence of the Effective Date, all of their appellate issues will be equitably mooted. Indeed, "equitable mootness applies to specific claims,

the failure to seek an expedited appeal with respect to a confirmed plan is a factor in determining equitable mootness. See Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 144-145 (2d Cir. N.Y. 2005) (dismissing appeal of confirmation order as equitably moot where, *inter alia*, appellant "sought no expedited review in [the] appeal"); Retired Pilots Assoc. of U.S. Airways, Inc. v. US Airways Group, Inc. (In re US Airways Group Inc.), 369 F.3d 806, 810 (4th Cir. 2004) (failure to seek a stay or expedited appeal "weighs strongly in favor of a finding of equitable mootness"). The Movants have clearly demonstrated that they may suffer irreparable harm if the appeal is heard on a normal schedule, and therefore the imposition of an expedited schedule is warranted.

## III. Alternatively, The Court Should Grant An Expedited Appeal Schedule In The Interest Of Expediting A Decision Under Bankruptcy Rule 8019

Irrespective of whether Movants can demonstrate irreparable harm – which they can – this Court should grant an expedited appeal under Rule 8019 in the interest of expediting a decision, given the circumstances of this case. See In re Combustion Eng'g, Inc., 2003 Bankr. LEXIS 1044, *3-4 (Bankr. D. Del. July 2, 2003) ("In the interest of expediting a decision, however, the Court has authority under Rule 8019 to suspend other timing requirements associated with a motion or appeal."). In

---

not entire appeals." In re Pacific Lumber Co., 584 F.3d 229, 241 (5th Cir. 2009). Appellate courts "apply equitable mootness with a scalpel rather than an axe." See id. at 240. Where an issue on appeal will not, or is unlikely to, result in the plan of reorganization unraveling, even where the plan has been substantially consummated, an appeal on that issue may proceed. See In re Zenith Elecs. Corp., 329 F.3d 338, 346 (3d Cir. 2003) (finding that a successful appeal on the issue of disgorgement of professional fees "would not knock the props out from under the authorization for every transaction that has taken place, and in fact would leave the plan entirely intact") (citations and quotations omitted); see also In re Chateaugay, 10 F.3d 944, 954 (2d Cir. 1993) (ruling that the possibility of fractional recovery was sufficient to avoid finding the appeal of a confirmation plan entirely moot).

addition to mitigating the risk of irreparable harm to the Movants, as discussed *supra*, an expedited appeal schedule would also benefit all parties to these proceedings. The Debtors and the AHC (which may seek reimbursement from the estate) will certainly incur substantial costs in seeking to consummate the AHC/Debtor Plan, and an expedited appeal will mitigate the risk of the estates being burdened with costs incurred on aspects of the AHC/Debtor Plan that may be reversed on appeal. Indeed, the Movants cannot conceive of any reasonable basis on which the Debtors or the AHC could assert they would be prejudiced by an expedited appeal schedule.

Moreover, under the AHC/Debtor Plan at Section 12.8, the AHC "reserves the right to revoke or withdraw the Plan prior to the Effective Date." In that event, "the Plan shall be deemed null and void." Id. The AHC's right to revoke or withdraw the AHC/Debtor Plan is subject only to the consent to the Debtors, and which consent may not be unreasonably withheld. See AHC/Debtor Plan § 12.15. Even if the AHC does not withdraw or revoke the plan, its members are relieved of their commitments to fund the Rights Offering upon the occurrence of a broadly defined "Material Adverse Event." See Backstop Agreement at § 6(a). Notwithstanding that a hearing to consider regulatory approvals in respect of the AHC/Debtor Plan has been scheduled on July 14, 2010, there remains a substantial threat that the AHC will walk away from the plan, because it has a "free option" to do so. In this regard, pursuant to Section 9.3 of the Plan, the AHC has the right to unilaterally extend the 180-day period during which the Effective Date must occur. An expedited appeal schedule will mitigate the risk of the AHC electing to delay the Effective Date of the AHC/Debtor Plan for a prolonged time period, while it considers whether or not it wishes to consummate and fund the plan.

Further, granting expedited review in this case is in the interest of the public at large, and the Atlantic City market in particular.  Granting expedited review in order to avoid equitable mootness is consistent with the public interest of preserving the ability of a party to effectively exercise its right to a meaningful review through a full and fair appeal process.  See AT&T v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 n.8 (3d Cir. 1994) ("As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.").  The Atlantic City market and Debtors' employees, among other parties, have a significant interest in ensuring that the Debtors emerge from bankruptcy under a feasible plan that will not result in a fourth bankruptcy filing.  It is thus critical that Movants are able to pursue their appellate rights, through which they intend to raise significant issues directly related to the feasibility of the AHC/Debtor Plan and the strong likelihood of failure under that plan, without the risk of having a significant portion of their appeal mooted before it can be heard.

## IV.    Proposed Appeal Schedule

As discussed above, the AHC/Debtor Plan may be substantially consummated on or shortly after July 14, 2010, the date of a scheduled hearing before the NJCCC to consider various applications for regulatory approvals in respect of the AHC/Debtor Plan.  Accordingly, Movants submit that an expedited schedule for this appeal should allow for a decision to be rendered by July 14.  To that end, Movants submit that the following proposed schedule is reasonable and appropriate under the circumstances:

June 17 (2 p.m.):   Deadline for Movants to file their opening appeal brief.

June 28 (2 p.m.):   Deadline for Appellees to file their response brief.

June 28:   Deadline for completion of the record and transmission of record to the District Court.

July 6 (2 p.m.):   Deadline for Movants' to file their reply brief.

Week of July 12:   Oral Argument.

## NAMES AND ADDRESSES OF COUNSEL

The names of all parties to this appeal and telephone number of their respective attorneys are as follows:

> Weil, Gotshal & Manges, LLP
> *Attorneys for Debtors*
> 767 Fifth Avenue
> New York, New York 10153
> (212) 310-8000
> Attn:  Michael F. Walsh, Esq.
>
> Stroock & Stroock & Lavan LLP
> *Attorneys for the Ad Hoc Committee*
> 180 Maiden Lane
> New York, New York 10038
> (212) 806-5400
> Attn:  Kristopher M. Hansen, Esq.
>
> White & Case LLP
> *Attorneys for Beal Bank*
> 1155 Avenue of the Americas
> New York, New York 10036-2787
> (212) 819-8200
> Attn:  Thomas E. Lauria, Esq.
>
> Brown Rudnick LLP
> *Attorneys for Icahn Partners*
> Seven Times Square
> New York, New York 10036
> (212) 209-4800
> Attn:  Edward S. Weisfelner, Esq.

-and-

One Financial Center
Boston, Massachusetts 02111
Attn: Jeffrey L. Jonas, Esq.

Kasowitz, Benson, Torres & Friedman LLP
*Attorneys for Donald J. Trump and Ivanka Trump*
1633 Broadway
New York, New York 10019
(212) 506-1700
Attn: David M. Friedman, Esq.

Office of the United States Trustee
*Attorneys for the United States Trustee*
United States Department of Justice
One Newark Center, Suite 2100
Newark, New Jersey 07102
(973) 645-2379
Attn: Martha Hildebrandt, Esq.

Buchalter Nemer P.C.
*Attorneys for Oracle*
333 Market Street, 25th Floor
San Francisco, California 94105
(415) 227-0900
Attn: Shawn M. Christianson, Esq.

Kelley Drye & Warren LLP
*Attorneys for Indenture Trustee*
101 Park Avenue
New York, NY 10178
(212) 808-7800
Attn: James S. Carr, Esq.

Cleary & Josem LLP
*Attorneys for UNITE HERE Local 54*
One Liberty Place, 51st Floor
1650 Market Street
Philadelphia, PA 19103
(215)-735-9099
Attn: William T. Josem, Esq.

Law Office of Gerald W. Berger
*Attorneys for Former Shareholders*
First National Tower
106 S. Main Street, Suite 2500
Akron, OH 44308-1447
(330) 253-2195
Attn:  Gerald W. Berger, Esq.


Law Offices of David J. Zendell, L.L.C.
*Attorneys for Eugene Kahn*
27 Church Street
Paterson, New Jersey 07505
(973) 278-3321
Attn:  David J. Zendell, Esq.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

WHEREFORE, the Movants respectfully request that this Court enter an Order: (i) directing the Clerk of the District Court to forthwith open a docket for this matter on an expedited schedule as set forth herein, or as the Court otherwise finds appropriate; and (ii) and grant the Movants such other and further relief as is just and proper.

Dated:  Trenton, New Jersey
June 9, 2010

**TEICH GROH**

By: _/s/ Brian W. Hofmeister_
Brian W. Hofmeiste
691 State Highway 33
Trenton, New Jersey
Telephone:  (609) 890-1500
Facsimile:  (609) 890-6961

   - and -

**WHITE & CASE LLP**
Thomas E Lauria
Gerard Uzzi
Andrew C. Ambruoso
Eric K. Stodola
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200

Facsimile:  (212) 354-8113

_Attorneys for Beal Bank, S.S.B., as_
_Administrative Agent_

**DUANE MORRIS LLP**

_/s/_ Gilbert L. Brooks
Gilbert L. Brooks (GB3196)
1940 East Route 70
Cherry Hill, New Jersey 08003
(856) 874-4204

   -and-

**BROWN RUDNICK LLP**
Edward S. Weisfelner (EW 5581)
Emilio Galván (EG 0984)
Daniel J. Saval (DS 2437)
Seven Times Square
Times Square Tower
New York, New York 10036
(212) 209-4800

   -and-

Jeffrey L. Jonas (JL 5670)
Andrew P. Strehle (AS 1770)
One Financial Center
Boston, MA  02111
(617) 856-8200

_Attorneys for Icahn Partners_

# 8255290