**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

------------------------------------------------------------x

In re:                                                      :
                                                            :
TCI 2 Holdings, LLC, et al.,                                :          **Case No. 10 cv 2924**
                                                            :
        Debtors.                                   :

------------------------------------------------------------x
                                                            :
Beal Bank, S.S.B, as Administrative Agent,                  :          <u>**On Appeal From**</u>**:**
and Icahn Partners LP, Icahn Partners                       :
Master Fund LP, Icahn Partners Master                       :          Chapter 11
Fund II LP, and Icahn Partners Master                       :
Fund III LP,                                                :          Case No. 09-13654 (JHW)
                                                            :
        Appellants,                                :
                                                            :
v.                                                          :
                                                            :
Ad Hoc Committee of Holders of 8.5%                         :
Senior Secured Notes Due 2015 and                           :
the Debtors,                                                :
                                                            :
        Appellees.                                 :

------------------------------------------------------------x

**APPELLEES' MEMORANDUM OF LAW IN OPPOSITION TO
EMERGENCY MOTION OF BEAL BANK AND ICAHN
PARTNERS FOR EXPEDITED APPEAL OF THE ORDER
CONFIRMING THE SUPPLEMENTAL MODIFIED SIXTH
AMENDED JOINT PLAN OF REORGANIZATION OF THE
AD HOC COMMITTEE OF HOLDERS OF 8.5% SENIOR
<u>SECURED NOTES DUE 2015 AND THE DEBTORS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ................................................................................................3

    A.    The Confirmation Opinion ................................................................................3

    B.    The Issues on Appeal ................................................................................5

    C.    Movants' Dilatory Conduct................................................................................8

ARGUMENT ................................................................................................10

    A.    Movants Must Show Irreparable Harm ................................................................10

    B.    Possible Equitable Mootness Is Not Irreparable Harm ..........................................12

    C.    Even If Equitable Mootness Could  Constitute Irreparable Harm, Movants
           Still Cannot Meet Their Legal Burden................................................................14

    D.    An Expedited Appeal Will Not  Benefit the Parties or the Public ..........................17

CONCLUSION................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.,
  57 F.3d 1215 (3d Cir. 1995)................................................................17

In re 15375 Memorial Corp.,
  2009 WL 393948 (D. Del. Feb. 18, 2009) .................................................12

In re Abitibibowater, Inc.,
  2010 WL 723020 (D. Del. Mar. 2, 2010) ..................................................11

In re Adelphia Comm'ns Corp.,
  361 B.R. 337 (S.D.N.Y. 2007)................................................10, 13, 14, 15

In re Adelphia Comm'ns Corp.,
  367 B.R. 84 (S.D.N.Y. 2007)..............................................................13

In re Baldwin United Corp.,
  45 B.R. 385 (Bankr. S.D. Oh. 1984)......................................................12

In re Calpine Corp.,
  2008 WL 207841 (Bankr. S.D.N.Y. Jan. 24, 2008).........................................12

In re Clark,
  1995 WL 495951 (N.D. Ill. Aug. 17, 1995) ..............................................12

In re Cujas,
  376 B.R. 480 (Bankr. E.D. Pa. 2007) ..............................................14, 15

In re Frascella Enterprises, Inc.,
  388 B.R. 619, 628 n.11 (Bankr. E.D. Pa. 2008) .........................................13

In re Dairy Mart Convenience Stores, Inc.,
  272 B.R. 66 (S.D.N.Y. 2002).............................................................10

In re General Motors Corp.,
  409 B.R. 24 (Bankr. S.D.N.Y. 2009) .....................................................15

In re Global Home Prods., LLC,
  2006 WL 2381918 (D. Del. Aug. 17, 2006) ...............................................12

In re MAC Panel Co.,
  2000 WL 33673784 (Bankr. M.D.N.C. Mar. 8, 2000) ......................................12

In re Premiere Operations,
  293 B.R. 334 (S.D.N.Y. 2003)........................................................10, 12

In re Sunflower Racing, Inc.,
  223 B.R. 222 (D. Kan. 1998) ............................................................12

In re Trans World Airlines, Inc.,
  2001 WL 1820325 (Bankr. D. Del. Mar. 27, 2001)........................................12

In re Tucker Anthony Realty Corp. v. Schlesinger,
  888 F.2d 969, 975 (2d Cir. 1989 ........................................................11

In re United Pan-Europe Comm'ns N.V.,
  2003 WL 221819 (S.D.N.Y. Jan. 30, 2003) ..............................................11

**STATUTES**

11 U.S.C. § 1129(b)(1) .............................................................................................4
11 U.S.C. § 1129(c) .............................................................................................5, 7

**FEDERAL RULES**

Fed. R. Bankr. P. 8005 ...........................................................................................10
Fed. R. Bankr. P. 8011 ...........................................................................................12
Fed. R. Bankr. P. 8011(d) ....................................................................................2, 11
Fed. R. Bankr. P. 8019 ......................................................................................11, 12

TCI 2 Holdings, LLC and its subsidiary and other affiliated entities, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), together with the ad hoc committee (the "Ad Hoc Committee" or "AHC" and, together with the Debtors, "Appellees") of certain holders of 8.5 % Senior Secured Notes due 2015 (the "Second Lien Notes") respectfully submit this memorandum in opposition to the emergency motion (the "Motion") filed by Beal Bank and Icahn Partners (together, the "Movants") for an expedited appeal from the Bankruptcy Court's Findings of Fact, Conclusions of Law and Order (the "Confirmation Order") Confirming Supplemental Modified Sixth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Proposed by the Ad Hoc Committee of Holders of 8.5% Senior Secured Notes Due 2015 and the Debtors (as amended and modified, the "Plan").

## PRELIMINARY STATEMENT

More than a month after entry of the Confirmation Order, Appellants suddenly demand expedited briefing and consideration of an appeal that raises at least nine fact-intensive appellate issues arising from a nine-day, thirteen-witness trial.  The Motion is pure litigation gamesmanship designed to deprive Appellees of adequate time to brief the appeal and to force this Court to render a snap decision with virtually no time to review, much less consider, the 2,573-page trial transcript and scores of exhibits and other documents that support the Bankruptcy Court's careful and comprehensive 121-page opinion (the "Confirmation Opinion") confirming the Plan.[1]

Movants are not entitled to the extraordinary relief they seek because, as a matter of law, they cannot make the showing of irreparable harm required by Bankruptcy Rules 8011(d) and

---

[1] The Confirmation Opinion is attached as Exhibit A to the Declaration of Jennifer C. Arnett, dated June 14, 2010 ("Arnett Dec.").

8019.  Courts have repeatedly held that the only "harm" cited by Movants – the possibility that

consummation of a bankruptcy plan of reorganization will moot their appeal – does not

constitute irreparable harm.  Were the law otherwise, virtually every order confirming a

bankruptcy plan of reorganization automatically would be subject to an expedited appeal.

Moreover, while purporting to rely on equitable mootness as the sole basis for irreparable harm,

Movants simultaneously assert, without specifying, that certain of their appellate arguments

might not be mooted at all by the Plan going effective.  This kind of double-speak will not wash.

 Movants cannot show irreparable harm for the fundamental  reason that the Plan

confirmed by Judge Wizmur pays Movants <u>in full</u> and gives them first lien security interests in

<u>all</u> of the reorganized Debtors' assets.  While Movants make the transparently unfounded (as

well as irrelevant) accusation that the AHC has a "free option" to walk away from the Plan

(Motion at 15) – notwithstanding the AHC's enormous investment in the process in which it

prevailed after sixteen months of continuous activity and its recent $10 million funding under the

AHC-sponsored debtor in possession credit facility that is <u>junior</u> to Movants' first lien position –

the record reveals that the only actual "free option" here is Movants' appeal.  The appeal is a no-

lose proposition for Movants; at the very worst, Movants will exit this case with their claims paid

in full and/or with ownership of the Debtors.  In the face of the Plan that pays them 100 cents on

the dollar, Movants' claims of "irreparable harm" are unsupportable.

 The lack of harm to Movants is also clear because they cannot show any likelihood of

success on their appeal.  As will be demonstrated below, Movants' appeal will ask this Court to

reverse numerous factual findings that were based on Chief Judge Wizmur's in-person

evaluation of live testimony and her weeks of deliberation on the voluminous documentary

record.  All these determinations are subject to a "clear error" standard of appellate review.

What is more, under the requested briefing schedule, Movants evidently expect to have this

Court render such an unlikely ruling less than a week after submission of appellate briefs and

immediately following oral argument.

Finally, the Motion should be denied as a matter of discretion because any "emergency"

was concocted entirely by Movants themselves by withdrawing the motion they made in the

Bankruptcy Court for a stay pending appeal and by their other dilatory conduct.  Apparently

realizing that they could not make the showings of (1) irreparable harm, (2) likelihood of success

on the merits and (3) the absence of substantial harm to the Debtors and the AHC – each of

which was necessary for Movants to succeed on their stay motion – and apparently unwilling to

post the huge bond required to stay the effectiveness of the Plan, Movants suddenly announced

literally on the eve of the hearing of the motion before Judge Wizmur, that they had voluntarily

withdrawn their stay motion.  It was only then that they announced their intention to try and

force this Court to hear and decide their appeal prior to the time the Plan becomes effective (the

"Effective Date").  This Court should not reward Movants' reckless and wasteful litigation

gambit by setting an expedited schedule that would force the rushed briefing and this Court's

rushed consideration of an appeal from the Bankruptcy Court's comprehensive 121-page

Confirmation Opinion.

## FACTUAL BACKGROUND

### A.    The Confirmation Opinion

After a trial lasting nine days during which the Bankruptcy Court heard from thirteen

witnesses, the Bankruptcy Court issued its Confirmation Opinion on April 12, 2010, confirming

the Plan over a competing plan of reorganization (the "Beal/Icahn Plan") proposed by Movants.

The Confirmation Opinion marked the culmination of the Debtors' heavily litigated chapter 11

cases, which were filed in February 2009.  The confirmation trial centered on such complex and

fact-intensive issues as the economic viability and financial condition of the reorganized Debtors under the Plan, the market rate of interest, the value of the "Trump brand" to the Debtors' business, and the value of the consideration to be paid under the Plan to Movants.  The Confirmation Opinion embodied Chief Judge Wizmur's painstaking factual determination that the Plan was both economically feasible and preferable to the Beal/Icahn Plan for a variety of reasons.  Based on days of detailed testimony from members of the Debtors' management and other fact witnesses, as well as from the parties' financial and other experts, she determined:

> While the AHC/Debtor Plan is less attractive on the issue of the company's balance sheet at its emergence from Chapter 11, leaving the company with about $334 million of debt, I have concluded that the plan is feasible as proposed, and presents other favorable aspects that enhance its feasibility.  Most notably, the Reorganized Debtors under the AHC/Debtor Plan would continue to benefit from the use of the Trump brand, and the future support of Donald and Ivanka Trump, free from potential litigation, rebranding costs and disruptions, and the associated business risks with losing the brand.  The prospect of prompt regulatory approval is stronger for the AHC/Debtor Plan, and the plan has the support of a significant number of debtors' employees, as reflected by the submission of the employees union.  The members of the AHC have worked closely with debtors' management for several months, and share a joint vision of a business direction for the company.

Confirmation Opinion at 118-19 (footnote omitted).

Importantly, the Bankruptcy Court made a lengthy and detailed factual determination that the Plan was "fair and equitable" to Movants as required by section 1129(b)(1) of the Bankruptcy Code.  Id. at 67-89.  In particular, Chief Judge Wizmur found that, under the Plan, Movants not only retain their liens on substantially all of the Debtors' assets (id. at 70-71), but also that the "the First Lien Lenders' claims are fully satisfied by the values distributed under the [P]lan."  Id. at 88 (emphasis added).  Those values include a cash payment of $125 million upon the Effective Date and receipt of new senior secured debt (the "New Term Loan") in the total amount of Movants' remaining claims bearing interest at 12%.  Movants are further benefitted under the Plan by loan covenants superior to those of their original debt and by the AHC's

infusion of $100 million of new capital (over and above the $125 million paid to Icahn Partners by the AHC at the Effective Date) into the Debtors.  Id. at 87.  In short, Movants are paid in full under the Plan.

In addition, the Bankruptcy Court gave careful consideration to the preference of creditors and other factors relevant under section 1129(c) of the Bankruptcy Code in determining which of the two plans to confirm.  In this regard, Chief Judge Wizmur stressed the fact that the Plan provided a distribution to all creditors, while the Beal/Icahn Plan distributed value only to a small "convenience class" and one other creditor, Icahn Partners, but provided the holders of $1.25 billion in Second Lien Notes with literally nothing at all.  She also gave considerable weight to the fact that Second Lien Noteholders, by far the largest creditor constituency, voted overwhelmingly in favor of the Plan.  Accordingly, she found that, "the significant support for the AHC/Debtor Plan by the largest creditor constituency, coupled with the treatment of creditors and feasibility considerations noted above, compels the conclusion that the AHC/Debtor Plan, as modified, should be confirmed."  Confirmation Opinion at 121 (footnote omitted).

## B.    The Issues on Appeal

Movants' acknowledgement that "[t]he issues on appeal are substantial" (Motion at 2) is a gross understatement, at least in terms of their depth and breadth.  (None of Movants' appellate issues, however, has any substance on the merits.)  Movants' appeal raises no less than nine separate appellate issues, all of them based on supposed factual errors made by the Bankruptcy Court based on this detailed record.

Movants' appeal asks this Court to second guess almost every aspect of Chief Judge Wizmur's factual determinations.  Movants' appeal will challenge, among other factual findings, the Bankruptcy Court's rulings with respect to:

- <u>Feasibility</u>.  Movants will urge this Court to reverse the Bankruptcy Court's determination that, based on extensive expert reports and testimony, the Reorganized Debtors will be financially viable under the Plan and will generate sufficient cash flow to service the New Term Loan.  In particular, Movants have mounted a complex attack on the reliability and validity of the Debtors' financial projections, an argument that will essentially ask this Court to disregard Chief Judge Wizmur's determinations of the credibility and reliability of the parties' expert and fact witnesses, determinations that were substantially grounded in the evidence.

- <u>Interest Rate</u>.  Movants will try to persuade this Court that Chief Judge Wizmur committed clear error when she determined that an interest rate of 12% – an interest rate at the high end of the range proposed by the Debtors' and the AHC's experts – was an appropriate market rate of interest for the New Term Loan and sufficient to compensate Icahn Partners for any risk assumed under the Plan, despite the ample evidentiary support in the record for her decision.

- <u>The DJT Settlement</u>.  Movants will contest the reasonableness of the Bankruptcy Court's approval of the settlement (the "<u>DJT Settlement</u>") of substantial claims between the Debtors and Donald and Ivanka Trump, a settlement that resolved the Debtors' disputed right to continued use of the Trump name and that paved the way to a new trademark license agreement (the "<u>New TLA</u>") and services agreement between the Debtors and Donald Trump.  In essence, Movants want this Court to countermand the Bankruptcy Court's considered judgment that the DJT Settlement, New TLA and services agreement confer substantial value on the Debtors and make the Plan preferable to the Beal/Icahn Plan, a decision well within Judge Wizmur's discretion.

- <u>Icahn Partners' Liens</u>.  Movants will contend that the Bankruptcy Court committed error in determining that the Plan allows Icahn Partners, which will hold 100% of the New Term Loan, to retain its pre-petition liens or to realize the indubitable equivalent of their claims.  This argument will require, at a minimum, a detailed analysis of the security interests afforded under the Plan and a comparison of the Debtors' pre-petition rights to the Trump name with the rights provided under the New TLA, an analysis that will, in the end, surely result in an affirmance of Judge Wizmur's opinion.

- <u>Backstop Fee</u>.  Movants will likewise ask this Court to substitute its judgment for that of the Bankruptcy Court in assessing the reasonableness of the "backstop fee" that members of the AHC will earn for committing $225 million of new equity capital to finance the Plan, a judgment well justified by the record evidence.

- <u>Relative Merits of the Competing Plans</u>.  Movants will also ask this Court to substitute its judgment for that of Chief Judge Wizmur in giving weight to the

decided preference of creditors for the Plan and other factors under section 1129(c) of the Bankruptcy Code. Movants want this Court to rule that Chief Judge Wizmur committed clear error when she determined that the overwhelming support for the Plan by the largest creditor constituency, coupled with the fact that the Plan, unlike the Beal/Icahn Plan, gave distributions to all creditors favored confirmation of the Plan, a most unlikely outcome.

See Movants' Statement of Issues to Be Presented on Appeal and Designation of Record To Be Transmitted to the District Clerk at ¶¶1-9; Motion at 12-13.

The appeal on all these issues will require the parties and the Court to canvass virtually the entire record of the confirmation trial as well as scores of other documents and filings that comprise the record below. That record includes:

- The 2,573-page transcript of the confirmation trial itself;

- The 121-page Confirmation Opinion;

- The 57-page Confirmation Order;

- The 66-page Plan and 109-page Disclosure Statement for the Plan;

- The 52-page Beal/Icahn Plan and 108-page Disclosure Statement for the Beal/Icahn Plan;

- The 101-page Amended and Restated Credit Agreement for the New Term Loan;

- The 48-page New TLA;

- The 26-page DJT Settlement;

- Seven expert reports submitted to the Bankruptcy Court by the parties' various financial, regulatory and valuation experts;

- Numerous other exhibits relied upon at the confirmation trial; and

- Transcripts from various pre-trial and post-trial hearings in the Bankruptcy Court.

In all, the parties will have designated nearly 300 items for inclusion in the record on appeal.

See Movants' Statement of Issues To Be Presented on Appeal and Designation of Record To Be

Transmitted to the District Clerk, attached as Exhibit B to Arnett Dec.; see also Arnett Dec. ¶ 4. (The Appellees' Counter-Designation of Record To Be Transmitted to the District Clerk will be served and filed on June 15, 2010.)

Movants propose that Appellees should have only eleven days following receipt of Movants' brief (on which they have doubtless been working for over a month) to brief all of the issues on appeal and to respond to Movants' arguments. Even if Appellees could somehow meet such a difficult schedule,[2] that would leave this Court with less than a week to analyze the briefs and the massive record. Incredibly, Movants' proposed schedule contemplates that the Court would then render a decision immediately following oral argument. See Motion at 16-17. The near impossibility of Movants' proposed schedule becomes apparent when one recalls that Chief Judge Wizmur, who presided over the confirmation trial and who worked with great diligence and dispatch, required nearly one month to consider the evidentiary record and legal arguments of the parties and write her Confirmation Opinion.

## C.  Movants' Dilatory Conduct

The extraordinary relief requested appears all the more unreasonable when viewed against Movants' pattern of delay and gamesmanship that created the appearance of "irreparable harm" they now decry.

Movants spent the three weeks following issuance of the Confirmation Opinion raising numerous objections to the terms of the proposed Confirmation Order and related debtor in possession financing and demanding changes to those orders. Those machinations ultimately required the Bankruptcy Court to hold an all-day hearing on May 6, 2010, at which Chief Judge

---

[2]    Upon receiving Movants' appellate brief, Appellees may well conclude that they will need additional time to respond to all the issues and arguments that Movants have said they will raise. Appellees reserve their right to seek an appropriate extension of time to file their answering brief.

Wizmur overruled virtually all of Movants' objections and approved the Confirmation Order

substantially in the form proposed by Appellees.[3]

Although the Confirmation Order was entered on May 7, 2010, Movants then proceeded

to wait ten more days, until May 17, before filing their pro forma Notice of Appeal.  They then

took the full fourteen days permitted under the Bankruptcy Rules – until June 1 – to file their

Statement of Issues to Be Presented on Appeal and Designation of Record to Be Transmitted to

the District Clerk.

Also on May 17, 2010, Movants filed an Emergency Motion for Stay Pending Appeal

(the "Stay Motion"), accompanied by a 51-page brief, to which the Debtors and the AHC were

obliged to file a comprehensive 68-page response.  That response demonstrated the absence of

irreparable harm to Icahn Partners if a stay were not granted, the lack of merit in any of

Movants' appellate issues, and the patently obvious substantial harm to the Debtors and the AHC

were a stay pending appeal granted.  The Stay Motion was all set to be heard by the Bankruptcy

Court on June 3, 2010.  But then, without explanation and only after Appellees had filed their

comprehensive objection to the Stay Motion, Movants abruptly withdrew their motion on the

afternoon of June 2, less than 24 hours before the scheduled hearing.  In so doing, they also

prejudiced their right to seek a stay in this Court.  See Fed. R. Bankr. P. 8005.

Movants now move for expedited treatment for this appeal ostensibly on the basis that the

New Jersey Casino Control Commission (the "CCC") issued its order setting the final hearing for

a necessary regulatory approval – one of the last conditions necessary for the Plan to go effective

---

[3]    Remarkably, in the course of the May 6 hearing, Carl Icahn, the principal of Icahn Partners and author of the
Beal/Icahn Plan, acknowledged to Chief Judge Wizmur that he had been prepared for months to settle his claims in
the Debtors' bankruptcy on the terms set by the Bankruptcy Court in the Confirmation Order and related order
authorizing debtor in possession financing.  May 6, 2010 Hearing Transcript at 245-50, attached as Exhibit C to
Arnett Dec.

-9-

– for July 14, 2010.  But the CCC's determination to proceed on July 14 was made on May 27, 2010, six days before Movants withdrew their Stay Motion.  Arnett Dec. Exhibit D.

The record thus reveals that Movants are the authors of their own "emergency."  They could have consented to entry of the Confirmation Order in April and appealed then, but they chose not to.  They could have noticed their appeal and filed their Statement of Issues immediately upon entry of the Confirmation Order on May 7, but they chose not to.  And if they really had any legitimate basis for claiming irreparable harm and thought their appeal had merit, they obviously could have pursued their Stay Motion that had been fully briefed, instead of suddenly withdrawing it on the eve of the hearing.  Indeed, Movants admit that they must now seek an expedited appeal because they withdrew the Stay Motion.  Motion at 3, n.4 ("The Movants withdrew their Stay Motion on June 2, 2010.  As a consequence, the Movants have elected to proceed by seeking an expedited appeal.").  In these circumstances, Movants' claim of necessity for extraordinary expedited treatment of their appeal by this Court comes with particularly ill grace.

## ARGUMENT

## MOVANTS ARE NOT ENTITLED TO AN EXPEDITED APPEAL

**A.** **Movants Must Show Irreparable Harm**

Expediting an appeal is "extraordinary" relief.  See In re Premiere Operations, 293 B.R. 334, 336 (S.D.N.Y. 2003).  As shown in the authorities cited by Movants themselves, to obtain such extraordinary relief, Movants must show that, absent an expedited appeal, they will suffer irreparable harm.  Fed. R. Bankr. P. 8011(d); In re Dairy Mart Convenience Stores, Inc., 272 B.R. 66, 70 (S.D.N.Y. 2002).  Moreover, Movants must also show that the threatened irreparable harm is "neither remote nor speculative, but actual and imminent."  In re Adelphia Comm'ns

Corp., 361 B.R. 337, 347 (S.D.N.Y. 2007) (ruling on motion for stay and expedited appeal)

(quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)).

Contrary to Movants' suggestion that some less stringent "good cause" standard may

apply under Bankruptcy Rule 8019, courts have read Rule 8019 as incorporating the requirement

of a showing of irreparable harm.  See In re United Pan-Europe Comm'ns N.V., 2003 WL

221819, at *3 (S.D.N.Y. Jan. 30, 2003) ("For the purposes of determining this motion and in the

absence of any discussion by the parties of the legislative history of Rule 8019 to the contrary,

the 'good cause' required by Rule 8019 will be equated to the requirement of 'irreparable harm'

required of emergency motions by Rule 8011."); see also In re Abitibibowater, Inc., 2010 WL

723020 (D. Del. Mar. 2, 2010) (denying motion for expedited appeal under both Bankruptcy

Rules 8011 and 8019 for failure to show irreparable harm).

Moreover, under any applicable standard, Movants' desire to disadvantage Appellees and

pressure the Court by shoehorning the entire appellate process into the short period between now

and July 14 cannot possibly outweigh Appellees' interest in having a full and fair opportunity to

respond and the Court's need for adequate time to review the record and decide the issues.

Appellees will require at least the fourteen days provided under the Bankruptcy Rules to respond

to the brief Movants have been working on for over a month.  As noted, Judge Wizmur, who has

lived with this case from its inception and who was intimately familiar with the trial record,

required nearly one month to write her Confirmation Opinion.  It is difficult to understand how

Movants can argue in good faith that this Court should decide all the issues on appeal in just a

day or two.  For this Court to have to attempt to familiarize itself with the record and decide the

issues on appeal in the short timeframe contemplated by the Movants would impose an enormous

burden on the Court and create unnecessary risks of error.  Given that Movants themselves

created this predicament by dawdling in the weeks following the Confirmation Opinion and then by withdrawing their Stay Motion, this is surely not a case in which the interest in expedited decision outweighs the need for the usual careful procedures established by the rules.

**B.      Possible Equitable Mootness Is Not Irreparable Harm**

Movants ask this Court to disregard the great majority of cases in this Circuit and across the country which have held that "[i]t is well settled that an appeal being rendered moot does not itself constitute irreparable harm."  In re Trans World Airlines, Inc., 2001 WL 1820325, at *10 (Bankr. D. Del. Mar. 27, 2001) (quoting In re 203 North LaSalle Street P'ship, 190 B.R. 595, 598 (N.D. Ill. 1995)); see also In re 15375 Memorial Corp., 2009 WL 393948, at *1 (D. Del. Feb. 18, 2009) ("[E]quitable mootness of an appeal, without more, does not constitute irreparable harm."); In re Calpine Corp., 2008 WL 207841, at *4 (Bankr. S.D.N.Y. Jan. 24, 2008) ("[M]erely invoking equitable mootness . . . is not sufficient to demonstrate irreparable harm."); In re Global Home Prods., LLC, 2006 WL 2381918, at *1 (D. Del.  Aug. 17, 2006) ("[T]he fact that [appellant's] appeal could be rendered moot by the closing of the sale does not in and of itself constitute irreparable harm."); In re MAC Panel Co., 2000 WL 33673784, at *4 (Bankr. M.D.N.C. Mar. 8, 2000); In re Sunflower Racing, Inc., 223 B.R. 222, 225 (D. Kan. 1998); In re Clark, 1995 WL 495951, at *6 (N.D. Ill. Aug. 17, 1995).

Were the law otherwise, almost any party objecting to a plan of reorganization that was about to go effective would be entitled to "expedition as of right" because the risk of equitable mootness is present in any post-confirmation appeal of a plan of reorganization.  See In re Calpine Corp., 2008 WL 207841, at *4 ("[E]quitable mootness . . . [is] a risk that is present in any post-confirmation appeal of a chapter 11 plan [and] is not sufficient to demonstrate irreparable harm.") (citations omitted); see also In re Premiere Operations, 293 B.R. at 336; In re Baldwin United Corp., 45 B.R. 385, 386 (Bankr. S.D. Oh. 1984) ("[I]f we were to accept [the

-12-

argument that that the possibility of mootness alone constitutes irreparable harm], then <u>every</u> order allowing a use, sale, or lease of property under § 363(b) should be stayed pending appeal . . . .") (emphasis in original).

Indeed, the decision in <u>Adelphia</u>, the case principally relied upon by Movants for the contrary proposition, actually serves to show why Movants should <u>not</u> be entitled to an expedited appeal in the circumstances of this case.[4]  Although Movants cite <u>Adelphia</u> as if it only involved an application for an expedited appeal, the central issue in <u>Adelphia</u> was appellants' application for a <u>stay</u> pending appeal.  The <u>Adelphia</u> court granted the stay based on appellants' ability to show both likelihood of success on the merits <u>and</u> irreparable harm in the event their appeal was mooted.  The <u>Adelphia</u> court then conditioned the grant of a stay and expedited appeal, however, on appellants' posting of a $1.3 billion bond.  <u>In re Adelphia Comm'ns Corp.</u>, 361 B.R. at 352, 354-68.  Significantly, when the <u>Adelphia</u> appellants declined to post the required bond, the plan of reorganization in that case went effective in advance of a hearing on their appeal.  <u>See</u> <u>In re Adelphia Comm'ns Corp.</u>, 367 B.R. 84 (S.D.N.Y. 2007).

<u>Adelphia</u> thus not only illustrates exactly the course of action Movants here should have taken, but also reveals why Movants instead chose to make the instant Motion.  Movants' proper course was to move in the Bankruptcy Court for a stay pending appeal and then, if that motion was denied – as it certainly would have been, given the absence of irreparable harm to the Movants unless a stay were granted, the absence of merit in their appeal, and the substantial harm to the Debtors and the AHC were a stay pending appeal entered – to seek a stay from this Court.  As noted, Movants in fact originally did move for a stay in the Bankruptcy Court.  Upon

---

[4]     Moreover, even if <u>Adelphia</u> did support Movants' position, a recent decision in the Eastern District of Pennsylvania makes clear that <u>Adelphia</u> represents a decidedly minority view and is not binding on the district courts of this Circuit.  <u>See</u> <u>In re Frascella Enterprises, Inc.</u>, 388 B.R. 619, 628 n.11 (Bankr. E.D. Pa. 2008).

review of Appellees' papers in opposition to the Stay Motion, however, Movants apparently realized that they could not show the irreparable harm or the likelihood of success on their appeal required for issuance of a stay and that they had no answer for the incontrovertible fact that a stay would cause substantial harm to both the Debtors and the AHC in numerous ways. They also were likely unable or unwilling to post the very substantial bond that would have been required had the Stay Motion been successful.

**C.    Even If Equitable Mootness Could
       Constitute Irreparable Harm, Movants
       Still Cannot Meet Their Legal Burden**

Moreover, even those cases that adopt the minority view that equitable mootness is a basis for finding irreparable harm have held that the risk of equitable mootness standing alone is not dispositive. Rather, these cases hold that a court should look beyond just the question of equitable mootness and evaluate the nature and degree of harm a movant is likely to suffer, as well as the potential harm to third parties. The nature of this analysis is summarized in another case relied upon by Movants, In re Cujas, 376 B.R. 480 (Bankr. E.D. Pa. 2007). There, the court stated that, even accepting "the proposition that the potential loss of a party's appellate rights through equitable mootness may constitute irreparable harm:"

> I hasten to add, however, that the existence of such harm is no guarantee that an appellant is entitled to a stay pending appeal. It is also necessary to go one step further and consider the nature of the underlying dispute and the harm that the loss of appellate rights may have on the moving party. That harm must then be balanced against the potential harm other parties may suffer if the stay is granted. And, as stated above, the balancing of the harms analysis also affects how the court evaluates the "likelihood of success on appeal" factor.

Id. at 487. Similarly, the Adelphia court only granted a stay and expedited appeal because appellants there established both a "strong possibility" of mootness and "a substantial possibility of success on the merits of several claimed errors." In re Adelphia Comm'ns Corp., 361 B.R. at

-14-

348, 368.  See also In re General Motors Corp., 409 B.R. 24, 31 (Bankr. S.D.N.Y. 2009) ("And thus I'll assume that the threat of equitable mootness is enough to satisfy the requirement of showing some irreparable injury – enough to get on the scoreboard with respect to this issue. How much that should be weighed, however – and especially how it should be weighed against different kinds of irreparable injury that others would suffer – is a very different question.") (emphasis in original).

Movants here cannot meet the test of Cujas and Adelphia for at least two reasons.

First, Movants do not claim that consummation of the Plan will equitably moot all their issues on appeal.  To the contrary, they expressly state: "Movants do not concede that, upon occurrence of the Effective Date, all of their appellate issues will be equitably mooted."  Motion at 13, n.11 (emphasis added).  Moreover, while they acknowledge that the doctrine of equitable mootness only applies on an issue-by-issue basis and not to entire appeals (id., citing In re Pacific Lumber, 584 F.3d 229, 241 (5th Cir. 2009)), they do not even go so far as to specify which of their nine asserted appellate issues might be mooted on the Effective Date.

Second, Movants cannot show any substantial harm here for the obvious reason that they are so generously compensated under the Plan.  As noted, the Plan pays Movants in full.  That payment starts immediately on the Effective Date, when Movants will receive $125 million in cash.  In addition and largely in response to Movants' objections to the Plan, their treatment under the Plan was dramatically improved by: (i) massively deleveraging the Debtors' balance sheet through the elimination of $1.25 billion debt held by Second Lien Noteholders and the injection of $225 million in new equity capital from the AHC; (ii) increasing the interest payable on the New Term Loan from approximately 6.2% to 12%; and (iii) significantly enhancing the covenants on the New Term Loan.

Remarkably, Movants have admitted that they withdrew the Stay Motion precisely because Movants were going to receive so much money on the Effective Date.  At a hearing just ten days ago, Movants' counsel told the Bankruptcy Court:

> [N]otwithstanding our views on the merits of our appeal and our intent to pursue it, we don't want to get in the way of the Ad Hoc Committee closing and closing as soon as possible.  As you know, we have a $125 million paydown when that happens.  That is of great interest to us.  And for that reason, we felt it was best to withdraw our stay motion.

June 3, 2010 Hearing Transcript at 13:23-14:7 (emphasis added), attached as Exhibit E to Arnett Dec.[5]

Movants cannot have it both ways.  They cannot bemoan their supposed "irreparable harm" and simultaneously hope for a "closing as soon as possible" so they can reap a $125 million payment.  The gross inconsistency of Movants' position is manifest.  Their desire to have the Plan go effective so they can realize their $125 million payday is the diametric opposite of a showing that they will be irreparably harmed by the Plan going effective before their appeal is decided.  For this reason alone, the Motion should be denied.

Movants' efforts to show irreparable harm are further frustrated by the fact, demonstrated in Appellee's opposition to the abandoned Stay Motion, that Movants are highly unlikely to succeed on any appeal.  As noted, all of Movants' issues on appeal contest the Bankruptcy Court's findings of fact and, therefore, all are subject to a "clearly erroneous" standard of

---

[5]    At that same hearing, counsel further admitted that Movants also withdrew the Stay Motion because they wanted to be sure that members of the Ad Hoc Committee would proceed to lend funds to the Debtors under a debtor in possession loan facility (the "DIP").  In counsel's words: "[I]f a stay was in place, our concern was there would be a basis for the DIP lenders not to lend, and that was of concern because we think, as you'll hear today, the Debtors need the DIP and need to borrow under it. We certainly didn't want to get in the way of that."  June 3, 2010 Hearing Transcript at 13:16-22 (emphasis added).  In any event, Counsel's purported concerns were baseless.  The AHC's commitment to fund the DIP was never conditioned on the absence of a stay (id. at 116-17), and the AHC has since funded $10 million on the DIP.

-16-

appellate review.  See Fed. R. Bankr. P. 8013; Fellheimer, Eichen & Braverman, P.C. v. Charter

Techs., Inc., 57 F.3d 1215, 1223 (3d Cir. 1995) (explaining that Bankruptcy Court's factual

determinations must be upheld unless "they are either completely devoid of minimum

evidentiary support displaying some hue of credibility or bear[] no rational relationship to the

supportive evidentiary data.") (citation omitted).  Chief Judge Wizmur's meticulous

Confirmation Opinion, however, leaves little question that she had ample evidentiary support for

her decision.  Indeed, Movants' inability to show a substantial likelihood of success on appeal

undoubtedly weighed heavily in Movants' decision to withdraw the Stay Motion.

**D.     An Expedited Appeal Will Not**
**Benefit the Parties or the Public**

Movants' arguments that an expedited appeal will somehow benefit Appellees or the

public are demonstrably frivolous.

As noted, the AHC and the Debtors intend to consummate the Plan on or about July 14,

2010.  The Movants assert that granting the expedited schedule would save the AHC and the

Debtors from substantial costs in seeking to consummate the Plan that could be reversed on

appeal.  It is clear, however, that those costs will be incurred regardless of the appellate schedule

because the proposed hearing to consider the expedited appeal would occur the same week as the

proposed closing.  As a consequence, there will be no savings and the AHC and the Debtors will

actually be burdened by having to prepare for the appeal on an expedited basis, including having

only eleven days to respond to the Movants' appellate brief and only six days to prepare for oral

argument after the filing of the Movants' reply brief.

Even less persuasive is Movants' assertion that granting an expedited appeal will be in

the public interest because it will preserve the rights of the Movants to a meaningful review

through a full and fair appeal process.  It is the Movants, however, that want to truncate the

-17-

process and prevent such a full review.  And if they thought it was so important that they receive

full appellate review, they should not have unilaterally and abruptly dropped their Stay Motion.

In any event, the public's interest in a full and thorough review process is not benefitted from the

Movants' attempt to truncate the process of considering the issues involved in these cases

effectively to the point of oblivion.

## <u>CONCLUSION</u>

For the foregoing reasons, the Debtors and the Ad Hoc Committee respectfully request

that this Court deny the Motion in its entirety.

Dated: June 14, 2010
Newark, New Jersey

*/s/ Charles A. Stanziale, Jr.*
Charles A. Stanziale, Jr.
Joseph Lubertazzi, Jr.
Lisa S. Bonsall
Jeffrey T. Testa
McCARTER & ENGLISH, LLP
Four Gateway Center, 100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070

-and-

*Co-Counsel for the Debtors*

Michael F. Walsh
Peter D. Isakoff
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Co-Counsel for the Debtors*

-and-

Kenneth A. Rosen
Jeffrey D. Prol
LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400

*Co-Counsel for the Ad Hoc Committee*

-and-

Kristopher M. Hansen
Curtis C. Mechling
Erez E. Gilad
Matthew Garofalo
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Co-Counsel for the Ad Hoc Committee*